[L.A. No. 31421. July 19, 1982.]

MARCUS M. KAUFMAN, as Associate Justice, etc., Petitioner, v.
THE COURT OF APPEAL, FOURTH APPELLATE DISTRICT,
Respondent;
AGRICULTURAL LABOR RELATIONS BOARD et al., Real
Parties in Interest.

COUNSEL

Ronald A. Zumbrun, John H. Findley and Joseph E. Maloney for Petitioner.

No appearance for Respondent.

Manuel M. Medeiros, Nancy Smith, Daniel G. Stone, Dianna Lyons, Francis E. Fernandez, Carmen S. Flores, Daniel A. Garcia, Marco E. Lopez, Carlos M. Alcala, Federico G. Chavez and Ellen J. Eggers for Real Parties in Interest.

## Opinion

**THE COURT.**\*—The petitioner is Marcus Kaufman, Associate Justice of Division Two in the Fourth District of the California Courts of Appeal. He requests that we nullify three orders dated April 6, 1981 (filed on April 13) that purportedly were issued on behalf of Division Two and were signed by his assigned colleague, retired Supreme Court Associate Justice Louis Burke. The orders concern nine proceedings pending in that court wherein the Agricultural Labor Relations Board (ALRB) is a party respondent.

Each of the three orders commands that Justice Kaufman "not sit or act in the above-entitled [Court of Appeal] proceedings." Why? Because "[i]t has been made to appear probable that, by reasons of bias and prejudice ..., a fair and impartial hearing cannot be had before him and, therefore, the Disqualification of Associate Justice Marcus M. Kaufman is sustained and allowed ...." Two of the declarations seeking disqualification had been filed by the ALRB assistant chief of litigation; the third, by counsel for the United Farm Workers of America (UFW).

Justice Burke made no statement of findings or reasons other than that quoted in the preceding paragraph. He cited no precedents; the only statutes mentioned are Code of Civil Procedure sections 170, subdivision 5, 473, and 576. He noted that he had been "assigned to the above-entitled Court [Division Two] as a Justice thereof by Order of the Honorable Rose Elizabeth Bird, Chief Justice of California and Chairperson of the Judicial Council, to hear and determine the issue of disqualification ...."

### Was Burke, J., Authorized to Disqualify Kaufman, J.?

#### A. *Code of Civil Procedure section 170.*

On January 22 and February 9, 1981, the Clerk of the Fourth District Court of Appeal in letters addressed to the Chairperson of the Judicial Council requested "that a judge be appointed to hear and determine the question of disqualification pursuant to the fifth paragraph under Sub. 5 of C.C.P. 170 at a time and place so designated by the ap-

---

\*Before Broussard, Acting C. J., Mosk, J., Richardson, J., Newman, J., Kaus, J., Files, J.† and Klein, J.†

†Assigned by the Acting Chairperson of the Judicial Council.

pointed judge." On March 18 he received a response from the Judicial Council's judicial assignments supervisor wherein he was advised as follows: "Your letters of January 22, 1981 and February 9, 1981, requesting the assignment of a judge to act upon the motions to disqualify Justice Marcus M. Kaufman in the above-entitled actions were referred to the Administrative Director of the Courts and Secretary to the Judicial Council, Ralph J. Gampell. As you know, Mr. Gampell wrote to Justice Kaufman and to all parties in these matters. [¶] After reviewing the responses, Mr. Gampell has asked the Chief Justice to assign a judge to determine the disqualification issue. [¶] The Honorable Louis H. Burke, retired Associate Justice of the Supreme Court, has been assigned to the Court of Appeal, Fourth Appellate District, Division Two from March 11, 1981 to April 11, 1981, to assist with these matters. The original of the assignment is enclosed."

That assignment by the Chief Justice and Judicial Council Chairperson reads: "THE HONORABLE LOUIS H. BURKE, retired Associate Justice of the Supreme Court of California, is hereby assigned to assist the Court of Appeal, Fourth Appellate District, Division Two as a Justice thereof, from March 11, 1981 to April 11, 1981, and until he has completed and disposed of all causes and matters submitted to him, and all petitions for rehearing arising out of such causes and matters."

The clerk's request and the chairperson's response appear to be attempts to comply with these words of Code of Civil Procedure section 170: "[T]he question of the judge's disqualification shall be heard and determined by some other judge agreed upon by the parties who shall have appeared in the action or proceeding, or, in the event of their failing to agree, by a judge assigned to act by the Chairman of the Judicial Council, and, if the parties fail to agree upon a judge to determine the question of the disqualification, within five days after the expiration of the time allowed herein for the judge to answer, it shall be the duty of the clerk then to notify the Chairman of the Judicial Council of that fact; and it shall be the duty of the Chairman of the Judicial Council forthwith, upon receipt of notice from the clerk, to assign some other judge, not disqualified, to hear and determine the question."[1]

---

[1]The statute has been amended by Statutes 1981, chapter 255, effective January 1, 1982. The section was rearranged and the unnumbered paragraphs following subdivision 5 were redesignated as subdivisions. Section 170, subdivision 5 has become section 170, subdivision (a)(5). The first unnumbered paragraph has become section 170, subdivision (b). The other unnumbered paragraphs are designated subdivisions (c) through (g). The new statute apparently makes no substantive change that would be pertinent here.

*Do those words of section 170 apply to appellate judges?*

Fifty years ago, after noting that for thirty earlier years California had left the question of bias to be determined solely by the challenged judge, a commentator reported: "Section 170 ... was changed by the Legislature in 1927 in a number of material respects, and particularly in regard to who is authorized to pass on the question of the disqualification of THE TRIAL JUDGE because of his alleged bias or prejudice." (Comment, *Judges: Disqualification for Bias: Cal. Code Civ. Proc. § 170* (1932) 20 Cal.L.Rev. 312, 313, emphasis added.)

Yet the last paragraph of this court's *per curiam* opinion in *Giometti v. Etienne* (1934) 219 Cal. 687, 689 [28 P.2d 913] reads: "*Petitioners also suggest* that section 170 of the Code of Civil Procedure does not apply to justices of appellate tribunals, and *that the sole ground for this disqualification is stated in section 170a*, providing that none may act in any cause which he tried in a lower court. There is nothing in the statute to indicate such a limited interpretation, and without express legislative exception, appellate judges must be deemed subject to the rules applicable to judges generally." (Italics added.)

In that last sentence, what exactly was meant by the words "appellate judges must be deemed subject to the rules applicable to judges generally"? Clearly the court was discussing *the grounds for disqualification*, not the appropriateness of or requirements for disqualification procedures. (See the first of the two quoted *Giometti* sentences.)

We have found no citable precedent where any Court of Appeal justice or justices undertook to disqualify a colleague.[2] Further, during the past 55 years—so far as we have been able to ascertain—only rarely have appellate justices who disqualified themselves made any declarations and filed memoranda pursuant to these words in the first unnumbered paragraph that follows Code of Civil Procedure section 170, subdivision 5: "Whenever a judge or justice shall have knowledge of any fact or facts, which, under the provisions of this section, disqualify him to sit or act as such in any action or proceeding pending before him, *it shall be his duty to declare the same in open court and cause a memorandum thereof to be entered in the minutes or docket.*" (Italics added, and note particularly the words "in open court.")

---

[2] Cf. *Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 480, footnote 5 [159 Cal.Rptr. 494, 601 P.2d 1030] (Supreme Court Justice disqualified by four Court of Appeal jus-

The first sentence of Code of Civil Procedure section 170, and also of its subdivision 5, contain the phrase "justice or judge." Together those two sentences read: "No justice or judge shall sit or act as such in any action or proceeding . . . 5. When it is made to appear probable that, by reason of bias or prejudice of such justice or judge a fair and impartial *trial* cannot be had *before him*." (Italics added.) Appellate justices rarely conduct "a . . . trial" of the kind the Legislature seems to have had in mind. Further, their formal proceedings are before a multiple-person court, not "before him." The words "trial," "before him," "before another judge," and "some other judge" nonetheless appear in all but one of the six unnumbered paragraphs. The penultimate paragraph of those unnumbered six concludes, "when there are two or more judges of the same court, one of whom is disqualified, *the action or proceeding may be transferred to a judge who is not disqualified*." (Italics added.) That clause certainly applies to trial courts only.

If the words of section 170 were applied to an appellate judge, what exactly would be the progression of events? Pursuant to the third un-numbered paragraph, for example, should he file with the clerk "his consent in writing that the action or proceeding *be tried* before another judge" (italics added)? (See too the introductory clause of the fifth un-numbered paragraph.) Would the cutoff date for counsel's objection be "the commencement of *the hearing of any issue of fact* in the action or proceeding before such judge" (see fourth unnumbered paragraph; ital-ics added)? Appellate justices rarely hear issues of fact.

Similarly, were we to uphold Justice Burke's three orders, should our command (pursuant to the fifth unnumbered paragraph) be that the proceedings now therefore be "heard and determined by another judge or justice not disqualified . . ."? (See sixth unnumbered paragraph.) Substantially all words in the fifth unnumbered paragraph seem to im-ply a legislative concern with single-judge courts only.

■ In sum, though section 170 has been amended more than 20 times since 1927, notwithstanding all those amendments (perhaps in part because of them) the directions as to procedure remain murky. Based on the bulk of the statute's words and reinforced by both contem-

tices sitting on a six-person ad hoc court; and see dis. opn. of Newman, J. in *Olson v. Cory* (1980) 27 Cal.3d 532, 548, 567-568 [178 Cal.Rptr. 568, 636 P.2d 532]; Burg, *Meeting the Challenge: Rethinking Judicial Disqualification* (1981) 69 Cal.L.Rev. 1445, 1465; Kleps, *The Appellate Disqualification Jumble*, L.A. Daily J. (Feb. 17, 1982) p. 4, cols. 4-7.)

poraneous comment and the history of their never having been applied to appellate judging from 1927 (when the words were enacted) until 1979, our interpretation is that all six of the unnumbered paragraphs affect trial judging only.

B. *Does other law justify Justice Burke's disqualifying Justice Kaufman?*

In the federal courts each appellate judge himself decides whether the facts require recusal. The only question left to the members of a higher court is whether, because of his bias, the appellate proceeding wherein he participated became illegally and prejudicially unfair.[3]

Both ALRB and UFW counsel contend that Code of Civil Procedure section 187 is pertinent. It reads: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

The only court that has "jurisdiction" in the nine cases affected here is the Court of Appeal, and by no means did it "adopt" Justice Burke's "mode of proceeding." Whether the court's clerk, the Judicial Council Chairperson, and Justice Burke properly created a jurisdiction is the issue we here decide.[4]

---

[3]In *Martin-Trigona* v. *Gouletas* (7th Cir. 1980) 634 F.2d 354 an appeal from a district court finding was accompanied by a motion to Chief Judge Fairchild to disqualify all judges of the Seventh Circuit. The chief judge refused, and the reviewing court said: "Motions for recusal are properly addressed only to the judge who is the object of the motion." (P. 355 fn. 1.) See also *United States* v. *Sibla* (9th Cir. 1980) 624 F.2d 864 ("section 455 [pertaining to disqualification of circuit justices] includes no provision for referral of the question of recusal to another judge" [p. 868]); *Davis* v. *Board of School Com'rs of Mobile County* (5th Cir. 1975) 517 F.2d 1044 (§ 455 is "self-enforcing on the part of the judge" [p. 1051]).

[4]An objection filed on March 25, 1981, by Justice Kaufman reads: "For the record I must take exception to the assignment of Justice .Burke to the Court of Appeal upon which I sit to determine the question of my disqualification in these cases. It is not to Justice Burke that I object, but his assignment to the court of which I am a member. It is my position that no member nor all the members of an appellate court have the authority to determine that another member of the court is disqualified to sit in a case. [¶] The foregoing, of course, assumes the applicability of Code of Civil Procedure section 170, subdivision 5, in the first instance, a matter I do not concede."

## WHO, IF ANYONE, HAS AUTHORITY TO DECIDE THAT A COURT OF APPEAL JUSTICE SHOULD BE DISQUALIFIED?

The decision against a challenged justice could be made (1) by his two colleagues on the panel, (2) by the majority of justices in his division or district, (3) by this court, (4) by a judge or panel agreed on by the parties (or the parties plus the challenged judge), or (5) by a judge appointed pursuant to section 170 or as otherwise prescribed in the future by the Legislature or, perhaps, the Judicial Council.

Those would be among the alternatives were we to hold that the federal rule allowing each appellate judge to decide for himself should not be followed in California. ■ We conclude instead (1) that, as to procedure, Code of Civil Procedure section 170 is not applicable, and (2) that the federal rule, which we are persuaded was—in effect—the accepted California rule until 1979, should be reaffirmed. Absent new legislation, that means that neither one's colleagues nor a judge or panel agreed on may assume jurisdiction. Further, in this court the sole question would be: "Because of his bias, did the appellate proceeding wherein a justice participated become illegally and prejudicially unfair?"

The record in this case demonstrates, we believe, that the diverse problems of appellate disqualification are too comprehensive and too complex for effective procedural rulemaking by courts, including this court.[5] The three orders dated April 6, 1981, commanding that Justice Kaufman not sit or act, are annulled.

KAUS, J.—I concur in the result mainly because on a question of this sort it is important that the outcome reflect the consensus of the court, even if that consensus commands widely disparate degrees of enthusiasm. At the same time I cannot resist a wistful note that with a certain amount of imagination—"liberal construction," if you will—it would have been possible to read the procedural provisions of Code of Civil Procedure section 170 so as to confer on each court—appellate as well

---

[5]Because we might have held that Code of Civil Procedure section 170 was applicable here, several issues regarding its detailed requirements were briefed and then argued orally. It appears that questions regarding what kind of "hearing" the Legislature in section 170 intended to require have by no means been resolved by the few published Court of Appeal opinions that address the questions. In none, so far as we can ascertain, was there adequate discussion of legislative intent, of due process requirements, or of critical distinctions between factual and legal issues.

as trial—jurisdiction to determine the challenged qualification of justices or judges. Given that interpretation, Code of Civil Procedure section 187 would indeed come into play and should permit an appropriate procedure to be devised.

The petitions of real parties in interest for a rehearing were denied August 25, 1982. Bird, C. J., did not participate therein.