[No. F002886. Fifth Dist. May 30, 1984.]

HENRY GARCIA et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

L. W. Holt and Arlene J. Irlando for Petitioners.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Gregory W. Baugher and Thomas Y. Shigemoto, Deputy Attorneys General, for Real Party in Interest.

OPINION

HAMLIN, J.—

THE CASE

Petitioners Henry Garcia and Rosie Garcia seek a writ of mandate (Code Civ. Proc., § 1085)[1] commanding the respondent superior court to vacate its order denying petitioners' motion to disqualify the Honorable Frank Creede, Jr. (§ 170, subd. (a)(5)); to allow petitioners an opportunity to challenge the Honorable Robert H. Kroninger, the judge assigned by the Chairperson of the Judicial Council to rule on petitioners' motion to disqualify Judge Creede (§ 170, subd. (e)); and to allow petitioners a full evidentiary hearing on any redetermination of their motion to disqualify Judge Creede.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

Upon direction of the California Supreme Court, this court issued an alternative writ of mandate directing the respondent superior court to grant the relief sought or to show cause before this court why a peremptory writ of mandate granting such relief should not issue. The superior court elected not to grant the relief sought, thereby necessitating further proceedings in this court.

Petitioners contend they were denied their right to effectively challenge the judge assigned to their trial, Judge Creede, due to two omissions. First was the failure of Judge Kroninger, the judge assigned to hear and determine their challenge, to provide an evidentiary hearing before making his ruling. The second omission complained of is the failure of anyone to give petitioners notice of the identity of the judge assigned to hear and determine their challenge until after he had ruled. We find both of petitioners' contentions unmeritorious and deny the petition and discharge the alternative writ previously issued by this court.

### THE UNDERLYING ACTION

Petitioners were initially arraigned on various drug-related charges in Fresno County Municipal Court on October 30, 1981. The charges involved sales of narcotics allegedly occurring on September 28 and September 30, 1981. After numerous and lengthy delays, petitioners were held to answer in superior court on February 8, 1983. Arraignment in superior court was continued several times. At the third arraignment setting defense counsel filed a motion under section 170, subdivision (a)(5), to disqualify the arraignment judge, the Honorable Stephen Henry. Judge Henry chose to disqualify himself rather than file an answer. The arraignment was continued to April 19, at which time petitioners refused to enter a plea and stood mute with counsel while the court entered a not guilty plea on their behalf. At that time motions were scheduled for May 13 and a jury trial date was set for June 20. On May 13, defense counsel obtained a continuance of the motions date from Judge Creede over the objection of the People. On the continued date defense counsel filed affidavits to disqualify Judge Creede and two other judges of the Fresno County Superior Court pursuant to the provisions of section 170, subdivision (a)(5).

Since we are concerned in this proceeding only with the challenge to Judge Creede, we will discuss only the contents of the affidavit for Judge Creede's disqualification. That affidavit alleged that Judge Creede had refused to reduce the bail set in a 1975 drug-related case involving petitioner Henry Garcia; that Judge Creede hated Henry Garcia; and that Judge Creede had a "prior reaction" to defense counsel in an unrelated case, People v. Kenneth Ray Allen, then pending in the superior court.

Judge Creede filed an answer denying disqualification for bias and/or prejudice pursuant to section 170, subdivision (d)(1), and a refusal to consent to disqualification. In his answer under oath, Judge Creede denied that he had any bias or prejudice toward petitioner Henry Garcia. He declared that, although he remembered the case in which the bail reduction request had been denied, he had not associated petitioner Henry Garcia with the defendant in that case until the identity was pointed out by defense counsel. The transcript of the bail reduction hearing attached to Judge Creede's declaration included Judge Creede's statement that, based on past experience, he considered defendants in large-volume, high-stakes drug cases to be "very high risk." Judge Creede also denied in his declaration that he had any bias or prejudice toward defense counsel as a result of defense counsel's temporary representation of Kenneth Ray Allen.

In each of his affidavits supporting the motions to disqualify Judge Creede, defense counsel included a request for "a hearing . . . in accordance with law where evidence in the form of testimony and documents may be produced." After the motions were filed, the presiding judge asked defense counsel whether any judge on the Fresno County Superior Court bench would be acceptable to defense counsel to rule on the disqualification of Judge Creede. He replied that he did not know at that time and asked for and received a further continuance of the hearing on the disqualification motions and all pretrial motions to June 21. On that day defense counsel advised the presiding judge that he would not accept any Fresno County Superior Court judge to hear the disqualification issue or any other motion, and defense counsel suggested no other judge who would be acceptable. The presiding judge then informed defense counsel he would refer the matter of disqualification to the Chairperson of the Judicial Council.

On June 28, Judge Kroninger "having been assigned by the Chief Justice of the California Supreme Court and Chairman of the Judicial Council to hear and rule on [petitioners'] motion for disqualification of Honorable FRANK J. CREEDE, JR.," denied petitioners' motion on the basis that an insufficient showing had been made to support such disqualification. This order was filed with the respondent superior court, and about 10 days later the presiding judge assigned petitioners' case to Judge Creede for the setting of pretrial motions and trial. Thereupon Judge Creede ordered the pretrial motions to be set for hearing on August 2. This date was later continued to September 19 at defense counsel's request.

On August 11, defense counsel filed his petition for writ of mandate/prohibition and a request for a temporary stay with this court. This court denied the petition. Petitioners then petitioned the Supreme Court for a hearing and requested a stay of the pending trial. On November 16 the

Supreme Court granted the petition for hearing and retransferred the matter to this court with directions to issue an alternative writ to be heard before this court.

DISCUSSION

I. *Petitioners' right to an evidentiary hearing.*

Petitioners contend the failure to afford them a hearing at which evidence could be adduced on their motion to disqualify Judge Creede constituted a denial of their constitutional right to due process of law. Article I, section 15 of the California Constitution provides with respect to criminal defendants in pertinent part: "Persons may not twice be put in jeopardy for the same offense, be compelled in a criminal cause to be a witness against themselves, or be deprived of life, liberty, or property without due process of law."

Although due process of law has been recognized as an element of a fair and impartial trial, it is not a right which lends itself to a fixed and immutable definition. In the context of considering the fairness of an alleged coerced confession, the court in *People* v. *Ditson* (1962) 57 Cal.2d 415, 440 [20 Cal.Rptr. 165, 369 P.2d 714], stated: "It is our duty to protect the defendant as to these fundamental rights in full measure as against the power of the state. It is likewise equally our duty not to unnecessarily hamper the state in its properly diligent efforts to enforce the law for the protection of all persons within our jurisdiction." Similarly, the court in *People* v. *Whittington* (1977) 74 Cal.App.3d 806, 820 [141 Cal.Rptr. 742], commented: "A fair trial does not include the right of the defendant to proceedings which are planned, directed or conducted by the defendant but, rather, proceedings that will accord the accused the fullest opportunity to preserve his rights and defend against the charges [citation omitted]." Bias of the trial judge has been recognized as an aspect of trial which could deprive a criminal defendant of the fair and impartial trial to which he is entitled. (See *People* v. *Cale* (1946) 74 Cal.App.2d 689, 697 [169 P.2d 649].)

The California Supreme Court has adopted a balancing approach in determining whether a challenged procedure violates due process safeguards. In *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622] the court stated in part: "These cases disclose that the extent to which due process relief will be available depends on a careful and clearly articulated balancing of the interests at stake in each context. . . . More specifically, identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation omitted.]" (*Id.,* at p. 269.)

In language similar to that of the California Constitution, the right to due process of law is guaranteed in both the Fifth and Fourteenth Amendments to the United States Constitution. To determine whether a particular procedure is sufficient to satisfy those constitutional guarantees, the court is similarly required to analyze the governmental and private interests affected. The factors to be considered are substantially the same as those identified in *People* v. *Ramirez. (Matthews* v. *Eldridge* (1976) 424 U.S. 319, 334-335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893].)

Like California, the federal courts have recognized that bias or prejudice on the part of the trial judge may deprive an accused of due process by depriving him of the right to a fair and impartial trial. (See, e.g., *United States* v. *Navarro-Flores* (9th Cir. 1980) 628 F.2d 1178, 1182; *Corbett* v. *Bordenkircher* (6th Cir. 1980) 615 F.2d 722, 723.)

█ With the principles of due process in mind, we examine petitioners' contention that, in failing to afford them a full evidentiary hearing on their motion to disqualify Judge Creede, their constitutional rights were somehow impinged. California has adopted a detailed statutory framework to govern the disqualification of judges. Specifically, Code of Civil Procedure section 170 provides in pertinent part: "(a) No justice or judge shall sit or act as such in any action or proceeding: [¶] . . . [¶] (5) When it is made to appear probable that, by reason of bias or prejudice of such justice or judge a fair and impartial trial cannot be had before that justice or judge." Subdivision (b) of section 170 provides that a justice or judge, having knowledge of facts which bring him or her within the categories of disqualification enumerated in subdivision (a), shall disclose the facts in open court and cause such facts to be made a part of the record. Subdivision (c) provides a mechanism by which any party to the litigation can raise such facts should the judge fail to do so. Subdivision (d) provides that a trial judge may, after a statement of disqualification is filed pursuant to subdivision (c), either file with the clerk a consent that the matter be tried before another judge or file a verified answer within 10 days admitting or denying any or all of the allegations in the statement of disqualification and setting forth any additional information relevant to the question of disqualification. Subdivision (e) outlines the procedure to be followed in the event a judge files an answer

to a statement of disqualification denying the allegations: "(e) No judge against whom a statement of objection or disqualification has been filed pursuant to this section, shall hear or pass upon any question of fact or law concerning his or her disqualification or the statement of objection or disqualification filed against the judge, but in every such case, all the questions concerning the judge's disqualification shall be heard and determined by some other judge agreed upon by the parties who shall have appeared in the action or proceeding, or, in the event of their failing to agree, by a judge assigned to act by the Chairman of the Judicial Council, and, if the parties fail to agree upon a judge to determine the questions of fact and law pertaining to the disqualification, within five days after the expiration of the time allowed herein for the judge to answer, it shall be the duty of the clerk then to notify the Chairman of the Judicial Council of that fact, and it shall be the duty of the Chairman of the Judicial Council forthwith, upon receipt of notice from the clerk, to assign some other judge, not disqualified, to hear and determine these questions and each of them."

The purpose of section 170 is to insure that a party is given a fair and impartial trial; it is not intended to be a device by which one party can inordinately delay the judicial proceedings. (*People* ex rel. *Air Resources Bd.* v. *Superior Court* (1981) 125 Cal.App.3d 10, 17 [177 Cal.Rptr. 816].)

The procedure for determining a contested motion to disqualify a trial judge for cause has been in place in virtually identical statutory language since 1927. The only case to consider in any detail whatsoever the nature of the proceeding contemplated by section 170 was decided in 1945. In *Bixby* v. *Hotchkis* (1945) 72 Cal.App.2d 368 [164 P.2d 808] the court considered the appeal of a plaintiff based in part upon a denial of his motion to disqualify a judge from ruling upon plaintiff's motion for a new trial. After the challenged judge filed an answering affidavit, the Judicial Council designated Judge Westover to decide the disqualification issue. Judge Westover denied the motion to disqualify, and the challenged judge later denied plaintiff's motion for a new trial. In affirming, the court stated in part: "The ground urged for reversal of that order is that Judge Westover considered and ruled upon the charge of disqualification in the absence of, and without notice to, plaintiff's attorney. It does not appear from the record that notice of the time and place when Judge Westover would hear and rule upon the matter was not given. While this, in itself, would be a sufficient ground for affirming the order [citation omitted], we do not adopt it, for the reason that to do so would imply that notice is necessary. We are of the opinion that it was not necessary that the parties have notice of the time and place when Judge Westover would consider and decide the matter of the alleged disqualification or that appellant be given an opportunity to offer further evidence or argument in the matter. . . . The judge selected by the parties or

appointed by the chairman of the Judicial Council has only to decide the question of disqualification and the manner in which he goes about it is left to his discretion. No form of trial or other formal procedure is directed and none is to be implied. It is a summary proceeding in which the several steps must be taken within the brief periods specified therefor. The evidence to be considered is recorded before the judge is selected, [and consists of the verified statement and the answer. Since there is no provision in the statute for the receipt of other evidence or for a formal presentation by motion, with or without argument, an ex parte consideration of the evidence is indicated as the proper procedure.][2] If the course of proceeding be not specifically pointed out by code or statute for the exercise of jurisdiction, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the code. (Code Civ. Proc., § 187.) The proceedings to be taken in the matter of alleged disqualification are clearly intended to be such as will avoid unnecessary formality and delay. The cases relied upon by appellant which relate to the giving of notice are not in point. They dealt with situations in which there had been failure to comply with specific statutory requirements for notice." (*Bixby* v. *Hotchkis, supra,* at pp. 373-374.)

The court in *People* v. *Powell* (1974) 40 Cal.App.3d 107, 144 [115 Cal.Rptr. 109], reached the same conclusion without further analysis. *Bixby* v. *Hotchkis* is consistently cited in secondary source materials outlining the procedure for judicial disqualification. (See, e.g., 1 Cal. Civil Procedure During Trial (Cont.Ed.Bar 1982) § 6.25, p. 226 ["The determination (of judicial disqualification) may be made ex parte without notice to counsel and without any formal hearing"]; 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 82, p. 359 ["The statute prescribes no procedure for the summary determination by the other judge. Accordingly, no trial or other formal hearing is required; no evidence need be taken in addition to that already before him (verified statement and answer); and he may proceed ex parte, making his decision without notice to counsel."].)[3]

---

[2]An apparent typesetting error at this point resulted in several lines of text being out of order. The bracketed material has been placed in its proper order.

[3]Petitioners argue that section 170.8 shows a legislative intent that they be afforded an evidentiary hearing on their motion to disqualify because of references in that statute to fixing a time for hearing the action or proceeding. Specifically, the statute, added in 1963, provides: "When there is no judge of a court qualified to hear an action or proceeding, the clerk or, if there be no clerk, the judge shall forthwith notify the Chairman of the Judicial Council of that fact. The judge assigned by the Chairman of the Judicial Council shall hear the action or proceeding at the time fixed therefor or, if no time has been fixed or good cause appears for changing the time theretofore fixed, the judge shall fix a time for hearing in accordance with law and rules and hear the action or proceeding at the time so fixed." However, our review of the legislative history of section 170.8 persuades us that petitioners' reliance is misplaced. Section 170.8 parallels language contained in section 170, subdivision (e), which had been specifically applicable to motions to disqualify a trial court judge since

Recently in *Kaufman* v. *Court of Appeal* (1982) 31 Cal.3d 933 [184 Cal.Rptr. 302, 647 P.2d 1081] the Supreme Court considered this procedural framework as it applied to the possible disqualification of an appellate court justice. In concluding that the provisions of section 170 were not applicable to the disqualification of appellate court judges, the court stated in part: "The record in this case demonstrates, we believe, that the diverse problems of appellate disqualification are too comprehensive and too complex for effective procedural rule making by courts, including this court.[5]"

As to the legislative intent regarding the type of hearing contemplated by section 170, we believe it is significant that in almost 40 years since the decision in *Bixby* v. *Hotchkis, supra,* the Legislature has not found it necessary to modify the statutory language to negate the ex parte procedure sanctioned in *Bixby*. Because section 170, formerly section 170.4, was enacted in basically its current form in 1927, no legislative history as such is available.

Beyond the hearing procedure itself, various other procedural safeguards exist to assure that the matter of the disqualification of the trial judge is itself properly determined and satisfies the requirements of due process. Witkin notes four procedural remedies available to a litigant who believes that his or her motion to disqualify a trial judge has been wrongfully denied.

(1) Assuming the denial of a motion to disqualify the trial judge, the party who has so moved may raise the issue of the alleged wrongful denial of the motion to disqualify in an appeal from an unfavorable judgment.

(2) A party who believes that his motion to disqualify the trial judge has been wrongfully denied may move to change the venue of trial pursuant to section 397, subdivision 4. Section 170, subdivision (j), provides that "[n]othing in this section contained shall affect a party's right to a change of the place of trial in the cases provided for in title 4 (commencing with Section 392) of Part 2 of this code." Specifically, section 397, subdivision 4, provides that venue may be changed "[w]hen from any cause there is no

1927. However, the legislative history of section 170.8 indicates that it "would supply a deficiency in the present law whereby in some cases there is no provision for notifying the Chairman of the Judicial Council when there is no judge qualified to hear a proceeding." Because no such deficiency existed with respect to motions pursuant to section 170, section 170.8 was clearly not intended to apply to any hearing on a motion to disqualify a trial court judge.

"[5]. . . It appears that questions regarding what kind of 'hearing' the Legislature in section 170 intended to require have by no means been resolved by the few published Court of Appeal opinions that address the questions. In none, so far as we can ascertain, was there adequate discussion of legislative intent, of due process requirements, or of critical distinctions between factual and legal issues." (*Id.,* at p. 940.)

judge of the court qualified to act." (This remedy could have been sought by defense counsel in the instant case, especially in light of his statement to Judge Mardikian on June 21, 1983, that no judge of the Fresno County Superior Court was acceptable to rule on the subject of the disqualification *or any other motion.*

(3) If the ground of disqualification is not known until after judgment, disqualification then becomes a basis for attack on the judgment itself.

(4) The party dissatisfied with the denial of his or her motion to disqualify the trial judge may seek immediate relief by way of a petition for a writ of mandate or prohibition, as was done in this case. We note that in this case counsel did not directly allege that the judge appointed by the Chairperson of the Judicial Council to pass upon Judge Creede's disqualification abused his discretion. (1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 89, p. 362; 1983 supp., § 89, pp. 282-283.)

The usefulness of the petition for writ of mandate or prohibition was discussed in *Pacific etc. Conference of United Methodist Church* v. *Superior Court* (1978) 82 Cal.App.3d 72 [147 Cal.Rptr. 44]. There the real party in interest argued that the petitioner was not entitled to writ of mandate as the "remedy at law" was adequate, i.e., although the petitioner's attempt to disqualify the trial judge under section 170, subdivision (a)(5), had been denied, the petitioner could have utilized its peremptory challenge under section 170.6. The appellate court rejected this argument and stated in part: "[P]olicy and sound reason dictate against requiring that a party exhaust the right to disqualify a judge peremptorily (Code Civ. Proc., § 170.6) before seeking vindication of the right to disqualify a judge for cause (Code Civ. Proc., § 170). Such rights are not fungible. . . . Section 170.6 provides for disqualification of a judge without factual proof of prejudice. As such, it provides an 'ace in the hole,' a means to disqualify a judge without the showing required by section 170, subdivision 5. Its purpose would be undercut by now requiring petitioner to exhaust, in reality forfeit, that separate and distinct right before seeking vindication of the right to disqualify a demonstrably biased judge. Such a remedy, which protects one right only at the sacrifice of another, is not adequate." (*Pacific etc. Conference of United Methodist Church* v. *Superior Court, supra,* at p. 80.)

 Taken together, the ex parte procedure discussed in *Bixby* v. *Hotchkis, supra,* 72 Cal.App.2d 368 for the initial determination of the disqualification of a challenged judge and the remedial procedures available to a litigant dissatisfied with the denial of such a motion are adequate to satisfy the due process requirements of both the state and federal Constitutions. The criteria delineated by the Supreme Court in *People* v. *Ramirez, supra,*

25 Cal.3d 260 support such a conclusion. We recognize that the private interests affected by the official action, i.e., the litigant's right to a fair and impartial trial, is a significant right resting on a constitutional foundation. Nonetheless, the risk that the litigant will be erroneously deprived of his interests in a fair and impartial trial by the procedures currently in place are minimal. The ex parte nature of the proceeding to determine the disqualification of a trial judge has been known to litigants since 1945. Since that time, counsel seeking to challenge a trial judge have been on notice that their motion to disqualify with supporting affidavits must be complete and contain sufficient factual allegations to enable the judge selected or appointed to pass upon the disqualification. Thus counsel's objection to the lack of an evidentiary hearing in this case, resulting in the determination "solely on the hastily prepared motion to disqualify" is not persuasive. Moreover, counsel does not explain why his motion was hastily prepared. The record gives us no clue. Judge Creede had arraigned the petitioners and set the motion date for May 13. Over the People's objection, Judge Creede continued the motion date at petitioners' request to June 3. On that date defense counsel filed three 2-page motions to disqualify Judges Creede, Pettitt and Meyers. If counsel was unable to prepare an adequate affidavit in the weeks during which these motions were pending, it seems highly unlikely that any additional benefit to petitioners would accrue from an evidentiary hearing.

The dignitary interests in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official (*People* v. *Ramirez, supra,* 25 Cal.3d at p. 269) is satisfied in the instant case by the nature of the proceedings required by section 170 itself. The problem, if any, in this case is not that petitioners were denied the opportunity to present their side of the story but that they did not adequately take advantage of the opportunity presented to them.

Finally, the governmental interest in expeditious resolution of judicial disqualifications is clear. As previously pointed out, the procedures for judicial disqualification are intended only to afford the litigant a fair and impartial trial; they are not intended to be a delaying tactic available to permit litigants to avoid a judicial "day of reckoning." In addition to adding little, if anything, to existing procedural safeguards, an evidentiary hearing on a motion to disqualify a trial judge, by nature an adversarial proceeding, would not only result in increased expenditure of judicial time and resources but would also place the challenged judge in the untenable position of submitting to cross-examination regarding his judicial role, actions, and demeanor. A defendant's right to a fair and impartial trial, guaranteed as an element of due process, does not mandate such an intrusive inquiry. In an analogous situation, the courts have upheld the use of affidavits alone as a

basis on which the trial court can assess alleged juror misconduct in a motion for a new trial and have declined to extend to the defendant any absolute right to subpoena jurors and thus compel their testimony in support of the motion. As the court stated in *People* v. *Scott* (1982) 129 Cal.App.3d 301, 308 [180 Cal.Rptr. 891], to permit such examination "would open the door to harassment of jurors and, . . . ultimately damage the jury process and the administration of justice." We believe equally strong policy considerations weigh against jeopardizing the integrity of the judicial process.

Therefore, we conclude that petitioners in the instant case were not deprived of due process of law by the failure of the judge assigned to pass upon their motion to disqualify the trial court judge to afford them a full evidentiary hearing.

## II. *Petitioners' right to notice of the identity of the judge assigned.*

As discussed with regard to *Bixby* v. *Hotchkis, supra,* 72 Cal.App.2d 368, no notice is required to counsel of the time and place at which the assigned or agreed-upon judge will pass upon the disqualification. However, *Bixby* v. *Hotchkis, supra,* does not specifically address the issue raised by petitioners, i.e., whether or not they are entitled to notice of the *identity* of the judge assigned to pass upon the disqualification.

Section 170, subdivision (e), provides that the Chairperson of the Judicial Council is to appoint a judge to pass on the issue of disqualification only in the event that the parties are unable to agree upon a judge to make this determination. With respect to the appointment in the instant case of Judge Kroninger, defense counsel states that "Petitioners were never provided the opportunity to evaluate or challenge the judge appointed to rule on their motion. In fact, it happens that the judge assigned, the Honorable Robert H. Kroninger, is one who has been repeatedly challenged under C.C.P. 170.6 by Petitioners' counsel in other actions." Although defense counsel does not specifically so state, the only relevant inference to be drawn from his objection is that, had petitioners been notified of the appointment of Judge Kroninger, they would have attempted to disqualify him, either under the peremptory provisions of section 170.6 or under the "for cause" provisions of section 170, subdivision (a)(5). It is the absence of opportunity to exercise such a challenge which petitioners contend deprived them of due process. ▇ We are not persuaded, however, that an opportunity to challenge a judge appointed by the Chairperson of the Judicial Council to pass upon the disqualification of another judge is either contemplated by the applicable statutes or required by the Constitution.

Petitioners rely upon *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182 [137 Cal.Rptr. 460, 561 P.2d 1148] as authority for their premise that a

section 170.6 peremptory challenge is available against a judge appointed to pass upon the disqualification of another judge. *Solberg,* however, is clearly distinguishable from the instant case. In *Solberg,* the district attorney's office had exercised a "blanket" challenge against a municipal court judge based upon her rulings in various prostitution cases. That judge *refused* to accept disqualification "on the ground that the pending matter— i.e., the motion to dismiss the charge—presented the same issues of law and fact that she had adjudicated in similar prosecutions against other defendants a week earlier" (*Solberg, supra,* at p. 187). The People thereupon filed a petition for a writ of mandate in the superior court alleging that the challenged judge had abused her discretion in declining to disqualify herself. The judge to whom the petition for writ of mandate was assigned was peremptorily challenged, pursuant to the provisions of section 170.6, by the defendants in the municipal court proceedings, the real parties in interest in the mandate action. The Supreme Court upheld real parties' exercise of their single peremptory challenge in the mandate proceeding notwithstanding the contention of the challenged judge that he was acting in an "appellate" capacity and was thus insulated from a peremptory challenge.

Although the underlying issue in *Solberg* was judicial disqualification, *Solberg* did not involve the proceedings established in section 170, subdivision (e). The municipal court judge in *Solberg* declined to accept peremptory disqualification upon the ground that she had earlier determined identical issues of law and fact in similar, although unrelated, proceedings. The prosecutor sought immediate review of her ruling by a petition for writ of mandate. The petition alleged that the municipal court judge had abused her discretion. In the mandamus proceeding the real parties in interest exercised the single peremptory challenge afforded to them by section 170.6 against the superior court judge routinely assigned to that proceeding. At no point during the *Solberg* proceedings were the parties faced with the necessity of agreeing upon a judge to pass upon the disqualification of another judge challenged for cause nor, alternatively, was the Chairperson of the Judicial Council compelled to intervene upon the failure of the parties to so agree. Thus the right of real parties in *Solberg* to peremptorily challenge the superior court judge assigned in the mandate action does not support petitioners' contention herein that they are entitled to similarly disqualify a judge appointed by the Chairperson of the Judicial Council to pass upon the disqualification of the trial judge.

Nor are we persuaded that petitioners are entitled to exercise their peremptory challenge against a judge appointed by the Chairperson of the Judicial Council to decide the disqualification of another judge by the failure of the language in section 170.6 to exclude the proceeding at issue herein or by the liberality with which that statute is to be construed. (See, e.g.,

*Lyons* v. *Superior Court* (1977) 73 Cal.App.3d 625, 627, fn. 1 [140 Cal.Rptr. 826].) We recognize, of course, that section 170.6 guarantees an important right to any litigant, specifically, to challenge a trial court judge based upon the litigant's *sworn belief* that he cannot obtain a fair trial before the assigned judge. Nevertheless, the peremptory challenge is a creation of statute, lacking the constitutional underpinnings of a challenge for cause, and is not available in every conceivable judicial action or proceeding. (See, e.g., *Kaufman* v. *Court of Appeal, supra,* 31 Cal.3d 933.) The exercise of the peremptory challenge is strictly curtailed by the terms of the statute and by judicial interpretation. The statute imposes on the litigant mandatory limitations with respect to the time of making the challenge and any prior involvement of the challenged judge, as well as limiting the use of the challenge to a single exercise during a given proceeding.

More important, however, to our determination that petitioners herein were not denied due process in being denied the opportunity to peremptorily challenge Judge Kroninger are the assurances, inherent in the practical application of the procedure defined in section 170, subdivision (e), that the determination of the disqualification of a challenged trial court judge will be fairly and impartially made. It bears repeating at this point that assurance of a fair hearing or trial is the basis for any judicial disqualification. Although the affidavit required by section 170.6 may be based upon the *belief* of the party or of the attorney that the trial judge is prejudiced against him, the statute mandates that the affidavit also attest that, as a result of such prejudice, the party or the attorney believes he ". . . cannot have a fair and impartial trial or hearing before such judge . . . ." (Code Civ. Proc., § 170.6, subd. (2).) The right to peremptorily disqualify a trial court judge is an extraordinary one, its purpose being to "preserve public confidence in the impartiality of the courts." (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 193.) Therefore, as long as the procedure outlined in section 170, subdivision (e), not only is fair but appears to be fair, the purpose underlying the peremptory challenge, section 170.6, is satisfied.

Initially, a judge appointed by the Chairperson of the Judicial Council to pass upon the disqualification of a trial judge remains subject to the provisions of section 170, subdivision (b), as well as canon 3C of the Code of Judicial Conduct. Both the statute and the canon require a judge to disqualify himself for any of the reasons which would otherwise justify a challenge for cause pursuant to section 170, subdivision (a). The provisions of section 170.6 are therefore a fallback position, an escape hatch for a party or attorney who *believes* a judge to be prejudiced such that a fair and impartial trial or hearing cannot be had before him, notwithstanding the failure of the judge to disqualify himself.

Moreover, the express provisions of section 170, subdivision (e), give to the litigants the right to agree on a judge to pass upon the issue of the disqualification of the trial court judge. In the usual hearing situation, neither the parties nor their attorneys have any say whatsoever in the assignment of a judge to hear the matter or to try the case. Under such circumstances, the efficacy of the peremptory challenge to protect the public's confidence in the impartiality of the judiciary is obvious. However, when, as in proceedings pursuant to section 170, subdivision (e), the parties have the right to select the judge in the first instance, there is correspondingly less need to protect the appearance of impartiality from any arbitrariness in judicial assignment.

Additionally, although the preferable procedure may be that the parties or their attorneys agree upon a judge from the same court as the challenged judge to pass on the disqualification, the statute itself does not impose this limitation. (See, e.g., 62 Ops. Cal. Atty. Gen. 295 (1979).) Thus, subject to approval and appointment by the Chairperson of the Judicial Council pursuant to the California Constitution, article VI, section 6, and subject to the power of the presiding judge of the court where the action is pending to transfer the entire action or proceeding itself to another judge of that court, not disqualified, whether or not the question of disqualification has been determined (§ 170, subd. (f); see also *Donovan* v. *Superior Court* (1952) 39 Cal.2d 848, 854 [250 Cal.Rptr. 246]), the parties and their attorneys may agree upon any active, eligible judge to pass on the question of disqualification. This being the case, the practical effect of the parties' failure to agree on *any* judge to determine the disqualification of the trial court judge is to afford the litigants the functional equivalent of unlimited peremptory challenges, i.e., inherent in the inability to agree must be the belief that a fair and impartial hearing cannot be obtained. Only when the parties have already failed to agree on any judge to pass on the issue of disqualification does the obligation to appoint a judge fall on the Chairperson of the Judicial Council. Affording either litigant at that point the right to exercise a peremptory challenge pursuant to the express provisions of section 170.6 is an unnecessary redundancy and not an entitlement mandated by due process.

Nor do we find that notice of the identity of the judge appointed by the Chairperson of the Judicial Council is required by due process to enable a party or his attorney to exercise a challenge for cause pursuant to the provisions of section 170, subdivision (a)(5). While we are not unmindful of the possibility for egregious abuse of the process were a challenge for cause permitted against a judge appointed by the Chairperson of the Judicial Council to pass upon a challenge for cause leveled against another judge, ad infinitum, the possibility of abuse is not sufficient to foreclose the important

protections afforded by section 170. However, as discussed above with respect to petitioners' argument that due process requires that they be afforded a full, evidentiary hearing on their motion to disqualify, the right to challenge a judge for cause is only an adjunct of the due process guarantee of a fair and impartial trial. Thus, in determining whether failure to notify petitioners of the appointment of Judge Kroninger to pass upon their motion to disqualify Judge Creede violated due process safeguards, it is appropriate to turn again to the balancing of considerations articulated by the California Supreme Court in *People* v. *Ramirez, supra,* 25 Cal.3d at page 269.

As previously stated, we recognize the importance of a litigant's private interest in a fair and impartial hearing or trial. However, we are convinced that there is virtually no risk that this interest will be compromised or lost by permitting a judge assigned by the Chairperson of the Judicial Council to determine the disqualification of the trial judge without first giving notice to the litigants of the identity of the appointed judge. The availability of immediate review of that determination by a petition for a writ of mandate is an adequate safeguard. Little, if any, additional protection would be afforded the private interest in a fair and impartial trial by prolonging the determination of a qualified judicial officer to conduct it.

Finally, the same right to immediate review of the appointed judge's determination of the issue of disqualification of the trial judge amply protects any dignitary interest the litigants could assert in presenting their side of the story, i.e., the unfairness of the hearing on the motion to disqualify. At the same time, the governmental interest in efficient and judicious expenditure of court resources is served by the procedure followed in this case. Both interests are protected in a manner fully consistent with the requirements of due process.

The procedure on which we rely permits a party who believes he has been aggrieved by the decision of an appointed judge on the issue of disqualification because of that judge's actual bias or prejudice against him to immediately file in the appellate court a petition for a writ of mandate.

The petition must be supported by affidavits or declarations under penalty of perjury alleging both (1) facts indicative of the actual bias or prejudice of the appointed judge against the party who had sought to disqualify the trial court judge *and* (2) facts indicating that such bias or prejudice operated to deprive the litigant of a fair hearing. This dual requirement is consistent with the recent decision of the California Supreme Court in *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781 [171 Cal.Rptr. 590, 623 P.2d 151].

Following the filing of the petition for writ of mandate with the necessary supporting affidavits, the appellate court exercises its original jurisdiction and decides the fairness and impartiality of the hearing given by the appointed judge to the aggrieved party's motion to disqualify the trial court judge in the first instance, guided by the principles of *Andrews* v. *Agricultural Labor Relations Bd., supra*: " 'In order for the judge to be disqualified, the prejudice must be against a particular party [citations] *and* sufficient to impair the judge's impartiality so that it appears probable that a fair trial cannot be held.' (Italics added.) The case thus suggests a two-tier inquiry in determining whether the bias alleged by a party is a sufficient ground for disqualification.

"The first inquiry consists of deciding whether the moving party has set forth legally sufficient facts to demonstrate the bias of the judicial officer. After that determination, the challenged judicial officer or a reviewing court must still decide whether such bias will render it probable that a fair trial cannot be held before that judge. In other words, the bias or prejudice must be 'sufficient to impair the judge's impartiality.' To be sure, once the existence of the bias has been established, it will not be difficult to demonstrate that a fair and impartial trial or hearing appears improbable. Nonetheless, this analysis is helpful in explaining that the threshold determination cannot be satisfied and has never been satisfied by an allegation of the mere appearance of bias." (*Id.*, at p. 792.)

Because the petition for writ of mandate contemplated herein is intended to be remedial and therefore would follow an initial denial of one party's motion to disqualify the trial court judge, the aggrieved party can clearly make a better showing of the deprivation of a fair and impartial hearing than can a party seeking to show the *possibility* of such deprivation at the time of making the initial motion. Thus, in addition to the affidavits presented in support of the petition for writ of mandate, the aggrieved party can include in his petition the original motion to disqualify the trial court judge with supporting and opposing affidavits. If the petition and supporting affidavits make a prima facie showing of bias as well as the deprivation of a fair and impartial hearing, and the petition is uncontroverted, the appellate court should grant the petition and issue its writ setting aside the denial of the motion to disqualify the trial court judge. If the appointed judge files an answer to the petition, including affidavits controverting the allegations of bias and the deprivation of a fair hearing, the appellate court, sitting as a finder of fact in an original proceeding, can resolve the conflicting affidavits and render its decision accordingly. Finally, in an extraordinary case when the affidavits are closely balanced, the appellate court may appoint a referee to conduct a full, evidentiary hearing on the actual bias or prejudice of the judge appointed by the Chairperson of the Judicial Council to pass upon the

disqualification of the trial court judge *and* whether such actual bias or prejudice operated to deprive the litigant of a fair hearing on the disqualification. Upon the filing of findings by the referee, the appellate court could then decide the issue raised by the petition.

In all but the extraordinary case, we believe this procedure will result in an expeditious resolution of the disqualification of the trial court judge and, because it guarantees such resolution immediately, the parties are spared the necessity of proceeding to trial before an arguably disqualified judge and subsequently asserting this disqualification on appeal.

On balancing all the considerations outlined in *People* v. *Ramirez, supra,* 25 Cal.3d 260, we find no denial of due process in the procedure outlined in section 170, subdivision (e), nor do we find that due process requires us to engraft onto that section a requirement that the parties, having failed to agree upon a judge to pass on the issue of disqualification of the trial court judge, be given notice of the identity of the judge appointed by the Chairperson of the Judicial Council.

The petition for writ of mandate is denied, and the alternative writ is discharged.

Andreen, Acting P. J., and Woolpert, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied July 26, 1984. Bird, C. J., was of the opinion that the application should be granted.